1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL PATRICK LESCH,

                            Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security, [1]

                            Defendant.

Case No. 3:12-cv-05925-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

        Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security income ("SSI") benefits.

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the

parties have consented to have this matter heard by the undersigned Magistrate Judge.  After

reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons

set forth below defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

        On June 10, 2009, plaintiff filed an application for disability insurance benefits and

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly.**

ORDER - 1

another one for SSI benefits, alleging he became disabled beginning November 13, 2001, due to degenerative disc disease, a herniated disc and arthritis. See ECF #7, Administrative Record ("AR") 18, 180.  Both applications were denied upon initial administrative review on August 7, 2009, and on reconsideration on November 13, 2009. See AR 18.  A hearing was held before an administrative law judge ("ALJ") on June 21, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 34-85.

In a decision dated July 26, 2011, the ALJ determined plaintiff to be not disabled. See AR 18-28.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 23, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On October 22, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's decision. See ECF #1.  The administrative record was filed with the Court on January 2, 2013. See ECF #7.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in finding plaintiff was engaging in substantial gainful activity; (2) in finding she did not have a severe mental health or sleep apnea impairment; (3) in finding he did not have an impairment that met or medically equaled the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 ("Listing 1.04 (disorders of the spine)); (4) in assessing his residual functional capacity; and (5) in finding him to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds defendant's decision to

ORDER - 2

1    deny benefits should be affirmed.

2                                         DISCUSSION

3            The determination of the Commissioner that a claimant is not disabled must be upheld by

4    the Court, if the "proper legal standards" have been applied by the Commissioner, and the

5    "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler,

6    785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security

7    Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

8    Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

9    proper legal standards were not applied in weighing the evidence and making the decision.")

10   (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

11           Substantial evidence is "such relevant evidence as a reasonable mind might accept as

12   adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

13   omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

14   supported by inferences reasonably drawn from the record.").  "The substantial evidence test

15   requires that the reviewing court determine" whether the Commissioner's decision is "supported

16   by more than a scintilla of evidence, although less than a preponderance of the evidence is

17   required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

18   admits of more than one rational interpretation," the Commissioner's decision must be upheld.

19   Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

20   sufficient to support either outcome, we must affirm the decision actually made.") (quoting

21   Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

22

23   _____

24   [2] As the Ninth Circuit has further explained:

25           . . . It is immaterial that the evidence in a case would permit a different conclusion than that
             which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by

26   ORDER - 3

1

I.     Substantial Gainful Activity

2

The Commissioner employs a five-step "sequential evaluation process" to determine

3

whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant

4

is found disabled or not disabled at any particular step thereof, the disability determination is

5

made at that step, and the sequential evaluation process ends. See id.  At step one of that process,

6

a determination is made as to whether the claimant is engaging in substantial gainful activity

7

("SGA").  A claimant will not be entitled to benefits for any period of time during which he or

8

she has engaged in "substantial gainful activity." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

9

1999); 20 C.F.R. § 404.1520(a)(4)(i), (b), § 416.920(a)(4)(i), (b).

10

11

At step one in this case the ALJ found plaintiff had engaged in SGA since November 13,

12

2001, the alleged onset date of disability. AR 20.  Specifically, the ALJ noted the record showed

13

plaintiff "posted earnings of $20,604.00 in 2008 from three employers," and that "[t]he average

14

monthly earnings for this year reached the level that indicates participation in substantial gainful

15

activity." Id.  Plaintiff argues the ALJ erred in so finding because the earnings he recorded were

16

obtained during a trial work period.  The Court disagrees.  A trial work period is a nine-month

17

period during which a "disabled claimant . . . can engage in substantial gainful activity and

18

continue to receive disability benefits." Johnson v. Sullivan, 929 F.2d 596, 597 (11th Cir. 1991)

19

(emphasis added); see also 42 U.S.C. § 422(c)(3) ("A period of trial work for any individual

20

shall begin with the month in which he becomes entitled to disability insurance benefits."); 20

21

22

23

C.F.R. § 404.1592(a) ("The trial work period is a period during which you may test your ability

24

25

26

substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

to work and still be considered disabled."), (d)(1) ("You are generally entitled to a trial work period if you are entitled to disability insurance benefits."), (e) ("It cannot begin gefore the month in which you file your application for benefits.").  Accordingly, while there is some support for plaintiff's assertion that a trial work period can begin prior to a determination of disability (see LaPierre v. Callahan, 982 F.Supp. 789, 791-94 (W.D. Wash. 1997); 65 FR 42772-01 at *42774), he is not entitled to claim a "trial work period" prior to the month in which he filed his application for benefits, which in this case was June 10, 2009.  Nor, for the reasons discussed in greater detail herein, has plaintiff shown the ALJ's determination in this regard to have been in error, such that he in fact is entitled to an award of benefits. See LaPierre, 982 F.Supp. at 791-94.

Plaintiff also has not shown the work he performed during 2008, was an unsuccessful work attempt.  In general, work a claimant is "forced to stop or to reduce below the substantial gainful activity level after a short time because of [the claimant's] impairment [is considered] to be an unsuccessful work attempt." 20 C.F.R. §404.1574(a)(1), § 416.974(a)(1).  "[E]arnings from an unsuccessful work attempt will not show that [the claimant is] able to" engage in SGA. Id.  Earnings for a given calendar year are based on the monthly "average" to determine whether SGA levels have been met. 20 C.F.R. §404.1574(b)(2), § 416.974(b)(2).  In addition, work is considered to have been performed at the SGA level if the claimant "worked more than 6 months . . . regardless of why [the work] ended." 20 C.F.R. §404.1574(c)(5), § 416.974(c)(5).

Plaintiff argues that each of the jobs he did during 2008, ended because of his disabling impairments, was not performed at the SGA level or lasted for less than three months. See 20 C.F.R. §404.1574(c)(3) ("We will consider work of 3 months or less to be an unsuccessful work attempt if you stopped working . . . because of your impairment."); § 416.974(c)(3).  As noted

above, however, the Commissioner's regulations consider only the average of monthly earnings. In addition, there is no indication that the six-month period of time contemplated above applies to each individual job performed, as opposed to the work done as a whole during that period. As such, the Court finds the ALJ did not err in determining plaintiff engaged in SGA during 2008, given that the record shows plaintiff worked for a period of at least seven months, even though not all of those months may have risen to the SGA level or that plaintiff may have left a job for reasons having to do with his alleged impairments. See AR 167.

Even if the ALJ did err in so finding here, furthermore, as defendant points out any such error was harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (any error on part of ALJ would not have affected "ALJ's ultimate decision."). This is because the ALJ did not find plaintiff to be not disabled on the basis of SGA and end his inquiry at step one, but went on to address "in the alternative" the remaining four steps of the sequential disability evaluation process. AR 21; see also AR 22-28.

II.   Plaintiff's Mental Health and Sleep Apnea Impairments

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also SSR 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has

1  "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

2  56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

3  F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their

4  symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

5  1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step

6  two inquiry described above, however, is a de minimis screening device used to dispose of

7  groundless claims. See Smolen, 80 F.3d at 1290.

8      The ALJ in this case found plaintiff had a severe impairment consisting of degenerative

9  disc disease at step two, finding further in relevant part that:

10

11         Other impairments have not been established as severe impairments.  The
           medical record referred to testing for sleep apnea after the claimant alleged he
12         was unable to sleep for more than 25 to 45 minutes (Ex. 13F-4).  This study,
           which was performed in February 2009, established that the claimant had 92%
13         sleep efficiency with occasional snoring (Ex. 20F).  For snoring, possible
           treatments included the use of nasal CPAP, upper airway surgery, weight loss
14         and participation in an exercise program.  The claimant's shortened latency to
           REM sleep was seen as possibly representing a secondary sleep disorder, as
15         this pattern is seen in patients who have sleep deprivation or depression.  With
           no clear diagnosis and no indication of any restriction in the performance of
16         work-related activities, the claimant has not established sleep apnea as a
           severe impairment.
17

18         Mental impairments were alleged in the medical record.  In January 2011,
           Sheila Chiu, M.D., stated the claimant was disabled for depression/anxiety.
19         However, the only potential symptom of depression mentioned was a sleep
           disturbance (Ex. 28F).  The claimant told Catherine Howe, M.D., in January
20         2011 that he had been depressed for many years, indicating this had started
           after his back injury 10 years earlier.  He complained about irritability,
21         nausea, and poor sleep (Ex. 28F-3).  However, Dr. Howe found the claimant
           to be appropriately groomed with fair eye contact, linear and logical thought
22         processes, and full orientation.  Although Dr. Howe listed diagnoses of major
           depressive disorder, panic disorder without agoraphobia, and chronic
23         marijuana use, the evidence is insufficient to find any mental impairment is a
           severe impairment.
24

25         Notably, the claimant reported mental health symptoms only in 2011, just five
           months prior to his hearing.  The timing of his report renders his complaints of
26

ORDER - 7

symptoms somewhat unreliable and self-serving.

AR 22.  Plaintiff argues the ALJ erred in finding he had no severe mental health or sleep apnea

impairment.  The Court disagrees.

As for plaintiff's sleep apnea, although plaintiff asserts the record clearly indicates that

impairment is severe, as noted by the ALJ – and as admitted by plaintiff – the record contains no

clear diagnosis of that condition (see AR 596-97).  Nor does the record contain any objective

medical evidence showing or suggesting the presence of actual work-related limitations due to

sleep apnea, and plaintiff's own self-reports of sleep problems are an insufficient basis on which

to establish severity at step two, particularly in light of the ALJ's unchallenged determination

that he is less than fully credible concerning his subjective complaints. See AR 23-25; ECF #10,

pp. 8-9 (citing AR 180, 188, 399, 411, 480, 482, 619); SSR 85-28, 1985 WL 56856 *4 ("At the

second step of sequential evaluation . . . medical evidence alone is evaluated in order to assess

the effects of the impairment(s) on ability to do basic work activities.").

The ALJ also properly evaluated the medical evidence in the record regarding plaintiff's

mental health impairments. See AR 864-66, 890-91.  Plaintiff argues Dr. Chiu stated that he "has

been disabled for pain and depression/anxiety for the past 10 years." AR 864.  But this is merely

what plaintiff reported to Dr. Chiu regarding his medical history, not Dr. Chiu's own medical

opinion on this issue. See id.  In addition, the fact that Dr. Chiu further noted plaintiff was on

psychotropic medication and that she diagnosed him with depression, a panic disorder and an

anxiety disorder, does not by itself give any indication that he suffers from a *severe* mental

health impairment, as Dr. Chiu gave no indication in her progress note as to the presence of any

work-related limitations. See AR 864-66.

Plaintiff also argues other evidence in the record supports a finding that he has a severe

ORDER - 8

mental health impairment, pointing to a notation in the medical history portion of an evaluation

report completed by H. Richard Johnson, M.D., which reads:

> 08-12-93 – Michael Herring, M.D. evaluated him for complaints of
> depression.  A manic depressive disorder had been diagnosed by a
> psychiatrist.  His depression was worsening.  There was a family history of
> depression on his mother's side.  His depression had not interfered with his
> work, which was doing ground maintenance at a condominium.  His
> psychiatric records were requested.  A follow-up note on 08-27-93 revealed
> that he was taking Prozac 20 mg daily.
>
> 01-25-95 – Follow up with Dr. Herring revealed that after being tapered off
> the Prozac, he developed anger management problems. . . .

AR 606.  But none of this indicates the presence of a mental health impairment that caused any

work-related limitations either before or after plaintiff's alleged onset date of disability.  See id.

Indeed, it was specifically noted that plaintiff's depression "had not interfered with his work." Id.

As such, this evidence does not help plaintiff here.  The same is true in regard to later notations

indicating plaintiff was taking medication for depression in late July 2004, that he discontinued

that medication in early October 2004 (see AR 614), and that he reported symptoms of

depression and anxiety, and was diagnosed with depression, by Dr. Johnson in early November

2009 (see AR 619, 623).

III.    Listing 1.04 (Disorders of the Spine)

At step three of the sequential disability evaluation process, the ALJ must evaluate the

claimant's impairments to see if they meet or medically equal any of the impairments listed in 20

C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings").  See 20 C.F.R § 416.920(d); Tackett v.

Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or

medically equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on

the claimant to establish he or she meets or equals any of the impairments in the Listings. See

ORDER - 9

1  Tacket, 180 F.3d at 1098.  "A generalized assertion of functional problems," however, "is not

2  enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

3       A mental or physical impairment "must result from anatomical, physiological, or

4  psychological abnormalities which can be shown by medically acceptable clinical and laboratory

5  diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical

6  evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996

7  WL 374184 *2 (determination that is conducted at step three must be made on basis of medical

8  factors alone).  An impairment meets a listed impairment "only when it manifests the specific

9  findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL

10 31248 *2.

11

12      An impairment, or combination of impairments, equals a listed impairment "only if the

13 medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least

14 equivalent in severity to the set of medical findings for the listed impairment." Id.; see also

15 Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing

16 that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed

17 impairment, he must present medical findings equal in severity to *all* the criteria for the one most

18 similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify

19 a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined effects of a

20 claimant's impairments or compare them to any listing in an equivalency determination, unless

21 the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d

22 676, 683 (9th Cir. 2005).

23

24      The ALJ need not "state why a claimant failed to satisfy every different section of the

25 listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ

26

ORDER - 10

did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

The ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any of those contained in the Listings, finding specifically that plaintiff's degenerative disc disease did not meet Listing 1.04 because:

> . . . he did not have evidence of nerve root compression accompanied by the other factors required by [Listing 1.04] subsection (A); he did not have spinal arachnoiditis as required by [Listing 1.04] subsection (B); and he did not have lumbar spinal stenosis resulting in pseudoclaudication as required by [Listing 1.04] subsection (C).[3]

---

[3] Listing 1.04 reads:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  The inability to ambulate effectively noted in Listing 1.04 subsection C is defined as:

> . . . Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having

ORDER - 11

AR 22.  The Court finds no error here.  Although plaintiff asserts the objective medical evidence in the record supports a finding that his physical impairments meet or medically equal the criteria of Listing 1.04, none of the evidence actually does so.  For example, as noted by the ALJ, it does not indicate the presence of actual nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, let alone the other requirements of subsections (A), (B) and (C) of that Listing.  See AR 388, 393, 447-57, 473, 475-78, 480-82, 493-95, 501, 503-04, 514, 559, 593-95, 621-22, 628, 630-31, 633-35, 646-49, 659-60, 682, 865.  Plaintiff points to his own self reports regarding his subjective complaints as well to support his argument here (see ECF #10, pp. 10-11 (citing AR 618-20), but as noted above symptoms alone will not justify a finding of medical equivalence, let alone a finding that a Listing has been met.

IV.      The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability

---

insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 100B2b.

ORDER - 12

to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, no postural limitations, and the ability to sit and stand/walk for 6 hours during an 8-hour workday except for a limitation to only occasional overhead work.**

AR 22 (emphasis in original).  Plaintiff argues the above RFC assessment is erroneous because it fails to take into account the impact of his mental health impairments.  But as discussed above, the objective medical evidence in the record fails to establish the existence of significant work-related mental functional limitations stemming therefrom.

Plaintiff also takes issue with the ALJ's rejection of the opinion of Andrew P. Manista, M.D., which limited him to sedentary work.  See AR 743.  The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

ORDER - 13

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

ORDER - 14

1 nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

2 constitute substantial evidence if "it is consistent with other independent evidence in the record."

3 <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

4         The ALJ rejected Dr. Manista's opinion because of the "failure to link objective medical

5 findings" to that opinion, and because the opinion "stands alone, as other doctors have

6 determined [plaintiff] is able to perform light or medium work." AR 25; <u>see</u> <u>Batson</u>, 359 F.3d at

7 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by

8 clinical findings or "by the record as a whole).  Plaintiff argues "the record is clear that Dr.

9 Manista's conclusion is supported by other evidence and opinions of doctors." ECF #10, p. 12.

10 As an example thereof, plaintiff points to the opinion of Dr. Herring that severe neck and back

11 pain prevented him from working. AR 664.  The ALJ rejected that opinion for the following

12 reasons:

13

> Another opinion deserving little or no weight is that of M[ichael] Herring,
> M.D., in his completion of a form in April 2009 (Ex. 24F-49).  In check-
> marking an answer "yes", he indicated that the claimant's impairment
> prevented him from working, but he failed to provide objective medical
> findings in support of this conclusion.  In fact, Dr. Herring contradicted
> himself as he also indicated that the claimant could possibly work in a desk
> job.  Most significantly, Dr. Herring's check mark that the claimant cannot
> work is inconsistent with the other more persuasive evidence in the record that
> the claimant can work.  Thus, little weight is accorded this opinion.

AR 26.  Plaintiff argues the ALJ erred in discounting Dr. Herring's opinion, because Dr. Herring

was his treating physician.  But this fact alone does not mean the ALJ was required to adopt Dr.

Herring's opinion, particularly where plaintiff has failed to rebut the ALJ's finding that it is not

supported by either Dr. Herring's own clinical findings or the medical evidence in the record as a

whole. <u>See</u> <u>Batson</u>, 359 F.3d at 1195.

        Plaintiff also relies on the opinion of Dr. Johnson that he was "currently unemployable at

ORDER - 15

any work level on a regular continuous basis" due to plaintiff's "neck and low back conditions [being] not fixed and stable." AR 626.  The ALJ rejected that opinion as well for the following reasons:

> Little weight is earned by the opinion from Dr. Johnson that the claimant was unemployable in any work on a regular and continuous basis (Ex. 23F-17). There is a gap between this opinion and the information cited by Dr. Johnson concerning the claimant's successful community college work.  Furthermore, Dr. Johnson reached this conclusion soon after the claimant's motor vehicle accident and before treatment for low back had begun: a time in which the claimant might reasonably have been unemployable for a short period of time.

AR 25.  Plaintiff does not specifically challenge these stated reasons for rejecting Dr. Johnson's opinion.  Given that no basis has been presented for finding fault therewith, the Court declines to do so.  See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).  Plaintiff, therefore, has failed to show any error on the part of the ALJ in assessing his residual functional capacity.

V.      The Step Five Determination

         If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines

ORDER - 16

1    (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th

2    Cir. 2000).

3          An ALJ's findings will be upheld if the weight of the medical evidence supports the

4    hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

5    Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

6    therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

7    Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

8    claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

9    (citations omitted).  The ALJ, however, may omit from that description those limitations he or

10   she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

11         At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

12   substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

13   functional capacity. See AR 78.  In response to that question, the vocational expert testified that

14   an individual with those limitations – and with the same age and education as plaintiff – would

15   be able to perform other jobs. See AR 78-79.  Based on the testimony of the vocational expert,

16   the ALJ found plaintiff would be capable of performing other jobs existing in significant

17   numbers in the national economy. See AR 26-27.

18         Plaintiff argues the ALJ erred in finding him to be capable of performing other jobs

19   existing in significant numbers in the national economy, because the vocational expert further

20   testified that if the above hypothetical individual needed an additional ten minute break "in order

21   to maintain sufficient concentration for average production," such a limitation would preclude

22   employment. AR 79-80.  Plaintiff, however, has failed to establish the medical evidence in the

23   record supports the existence of such a limitation, and therefore to show the ALJ was required to

ORDER - 17

adopt it or accept the vocational expert's additional testimony here.  Accordingly, the ALJ did

not err in finding plaintiff to be not disabled at step five.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded

plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 4th day of October, 2013.

Karen L. Strombom
United States Magistrate Judge

ORDER - 18